# EXHIBIT #1

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

**THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT** (the "Agreement") is made and entered into on this the 27th day of December, 2007 (the "Effective Date"), and is by and between **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "SELLER"), at 2875 South Orange Avenue, Suite 500, PMB 2325, Orlando, Florida 32806, and **Ravi Roopnarine as Trustee of the RAVI WORLD LAND TRUST dated December 20, 2007**, a Florida land trust (the "BUYER"), having an address at 11450 Nellie Oaks Bend, Clermont, FL 34711. SELLER and BUYER are each sometimes individually referred to herein as a "Party" and collectively as the "Parties."

## RECITALS:

**WHEREAS**, SELLER owns Seventy Percent (70%) of the total issued and outstanding membership interests ("Membership Interest") of **FLHP-MS, LLC**, a Florida limited liability company (the "Company"), having an address at 4786 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34746;

**WHEREAS**, the Company is the sole beneficiary owning One Hundred Percent (100%) of the beneficiary interest of the Palm Suites Land Trust dated August 24, 2005 (the "Trust");

**WHEREAS**, the Trust owns the rights and title to that certain real estate property located in Osceola County, Florida, at 3104 Parkway Blvd., Kissimmee, Florida 34747 ("Property"), as set forth in more detail in **Exhibit A**, attached hereto and incorporated herein by this reference;

**WHEREAS**, BUYER acknowledges that Kennedy Funding, Inc. ("KFI") entered into that certain loan and security agreement with the Trust and currently holds a promissory note in the Principal amount of Nine Million Six Hundred Thousand and 00/100 Dollars ($9,600,000.00), which is secured by a mortgage and security agreement on the Trust and Property. KFI's mortgage is recorded at Official Records Book 2973, at Page 2744, in the Public Records of Osceola County, Florida. KFI's promissory note, and Assignment of Leases and Rents, is recorded at Official Records Book 2973, at Page 2806, and Official Records Book 2973, at Page 2796, respectively, in the Public Records of Osceola County, Florida;

**WHEREAS**, BUYER acknowledges that KFI is currently maintaining an action to foreclose its mortgage on the Property, against the Trust and various other defendants, in the Circuit Court of the 9th Judicial Circuit in and for Osceola County, Florida, Case No.: CI-07-MF-2279 (the "Foreclosure Case"). BUYER represents and warrants that it has contacted KFI with respect to the Foreclosure Case and has reached an agreement with KFI, whereby the Trust will be able to refinance the mortgage and abate the Foreclosure Case;

**WHEREAS**, BUYER acknowledges that other claims and liens may exist on the Property as of the Effective Date of this Agreement;

**WHEREAS**, BUYER represents and warrants that BUYER has performed any and all necessary due diligence in connection with the Trust and Property, and the purchase of the Membership Interest, and BUYER acknowledges that it has received and reviewed the "Palm Suites Land Trust Documents," including, but not limited to, the following documents in connection with the Trust and Property prior to the execution of this Agreement: (1) The Palm Suites Land Trust Agreement dated August 24, 2005, (2) KFI's Loan Closing Statement dated

Seller

Buyer

November 9, 2005; (3) Mortgage and Security Agreement between KFI and the Trust dated November 9, 2005; (4) Assignment of Leases and Rents between KFI and the Trust dated November 9, 2005; (5) KFI's Promissory Note with the Trust dated November 9, 2005; (6) Thomas Hayes and Earnest L. Reid Guaranty with KFI dated November 9, 2005; (7) Assignment of Licenses, Contracts, Plans, Specifications, Surveys, Drawings, and Reports between KFI and the Trust November 9, 2005; (8) KFI's UCC-1 Financing Statement; (9) Loan and Security Agreement between KFI and the Trust dated November 9, 2005; (10) Environmental Indemnity Agreement between KFI and the Trust dated November 9, 2005; (11) Document Re-execution Agreement between KFI and the Trust dated November 2005; and (12) a copy of the Complaint for Foreclosure and Damages in connection with the Foreclosure Case;

**WHEREAS**, BUYER acknowledges that the sale of the Membership Interest contemplated herein could result in the acceleration of the Obligation (as that term is defined in the Mortgage and Security Agreement between KFI and the Trust dated November 9, 2005) by KFI;

**WHEREAS**, SELLER desires to sell, and BUYER desires to purchase, the Membership Interest on an **"As Is"** and **"Where Is"** basis as set forth in this Agreement, and that SELLER makes no representation or warranties of any kind whatsoever as to the Membership Interest, the Trust, or the Property, unless otherwise specifically set forth herein;

**WHEREAS**, BUYER agrees to purchase the Membership Interest for the total Purchase Price (as defined herein), whereby the outstanding balance of the Purchase Price shall be paid pursuant to a Promissory Note (as defined herein) which shall be secured by a Pledge and Security Agreement ("Pledge Agreement") against the Membership Interest including any and all results and proceeds derived from the sale of the Trust or Property, and BUYER agrees and warrants that such Pledge Agreement shall be a condition of this Agreement and BUYER agrees to fully cooperate and enter into and execute such Pledge Agreement with SELLER. BUYER further agrees to cause the Company and the Trust to record this Agreement, the Promissory Note, and the Pledge Agreement in the Official Records Book in the Public Records of Osceola County, Florida in the chain of title associated with the Property;

**WHEREAS**, BUYER agrees that upon the Effective Date of this Agreement, BUYER shall immediately appoint a Trustee to manage the Trust and shall direct the Trustee to fully assist and cooperate with SELLER in preparing, executing, filing and/or recording any and all documents (including, without limitation, the Promissory Note, Pledge Agreement, and any corresponding UCC filing(s)) that shall be required to secure and perfect SELLER's Promissory Note and Pledge Agreement on the Membership Interest including any and all results and proceeds derived from the sale of the Trust or Property; and

**WHEREAS**, BUYER agrees that as an additional condition for SELLER to enter into this Agreement, BUYER shall be obligated to defend the Foreclosure Case in the name of and on behalf of the Trust, and shall be responsible for obtaining a dismissal of the Foreclosure Case as to the Trust, and that BUYER expressly warrants that as of the Effective Date of this Agreement SELLER shall forever be discharged and released from any and all liabilities, claims, causes of action, monies or damages of any kind or nature whatsoever, in connection with the Foreclosure Case whether in law or in equity, now existing, known or unknown, contingent or matured, express or implied, from the beginning of the world through the Effective Date of this Agreement.



Buyer

**NOW, THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledge, the Parties agree as follows:

1.    **RECITALS.** The statements contained in the recitals of fact set forth above (the "Recitals") are true and correct, and are incorporated by reference herein.

2.    **SALE OF MEMBERSHIP INTEREST.** SELLER shall sell, transfer and convey to BUYER, and BUYER shall purchase and acquire from SELLER, the Membership Interest upon the date of Closing (as defined herein) which shall be free and clear of all adverse claims, liens, restrictions on transfer or encumbrances of any kind whatsoever, other than the liens and encumbrances created pursuant to the terms and conditions of this Agreement for the benefit of SELLER.

3.    **PURCHASE PRICE.** The total sum of **SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($750,000.00)** shall be paid by BUYER to SELLER, or its designee, as the full purchase price for the Membership Interest together with other good and valuable consideration (the "Purchase Price"), which BUYER and SELLER agree constitutes good, valuable and sufficient consideration. The Parties acknowledge and agree that the Purchase Price has been determined on an arms'-length basis and is at least the fair market value of the Membership Interest.

4.    **PAYMENT OF PURCHASE PRICE.** The Purchase Price shall be payable to SELLER as follows:

a.    Upon the date of Closing, BUYER shall pay to SELLER, or its designee, One Hundred Sixty-Five Thousand and 00/100 Dollars ($165,000.00) in cash, by check or wire transfer of immediately available funds (the "Initial Purchase Price Payment"). From the Initial Purchase Price Payment, SELLER shall be responsible for satisfying the following debt obligations: (i) One Hundred Fifteen Thousand and 00/100 Dollars ($115,000.00) of the Initial Purchase Price Payment shall be paid by SELLER to RKT Constructors, Inc. to satisfy their construction lien on the Property; and, (ii) Fifty Thousand and 00/100 Dollars ($50,000.00) of the Initial Purchase Price Payment shall be paid by SELLER to John Harris for services rendered.

b.    The remaining balance of the Purchase Price, which equals the total sum of Five Hundred Eighty-Five Thousand and 00/100 Dollars ($585,000.00) (the "Principal"), shall be payable to SELLER, or its designee, which shall be paid in monthly installment payments of interest only commencing on January 1, 2008 and interest shall continue to be paid on the first day of each and every month thereafter for a period of One (1) year. At the end of One (1) year the outstanding balance of the Principal, including any and all accrued and unpaid interest thereon, shall be due and paid in full on December 31, 2008 ("Maturity Date"). In connection therewith, BUYER agrees to execute and deliver a Promissory Note to SELLER for the total Principal payable to SELLER, or its designee, together with interest at the fixed interest rate of Six Percent (6%) per annum (the "Note"), which shall be attached hereto and incorporated herein as **Exhibit B**.

c.    The Note shall be secured by the Pledge Agreement, a copy of which is attached hereto and incorporated herein as **Exhibit C**, and shall be personally guaranteed by **RAVI ROOPNARINE** pursuant to that certain Guaranty Agreement, dated of even date herewith (the "Guaranty"), a copy of which is attached hereto and incorporated herein as **Exhibit D**. BUYER, and BUYER's designated Trustee for the Trust, represent and warrant that they shall fully cooperate with SELLER in preparing, executing, filing and/or recording the Pledge Agreement and any and



Seller

Membership Interests Purchase Agreement
FHP-MS, LLC
Page 3 of 14

Buyer

all other required documents in order to perfect and maintain SELLER's secured interest, including, but not limited to a UCC-1 financing statement on the Property.

5.   **CLOSING.** The purchase and sale provided for in this Agreement shall take place on or before December 27, 2007, at the law offices of Leonard H Baird, Jr., Esq., at 635 W Highway 50 Suite A, Clermont, Florida 34712-1066 (the "Closing"), or at such other time, date or place as the Parties mutually agree in writing.

6.   **CLOSING OBLIGATIONS.** At the Closing:

a.   <u>Deliveries by SELLER</u>. SELLER has delivered, will deliver, or will cause to be delivered within a reasonable time after date of Closing, to BUYER:

(i)     corporate book of Company, if any;

(ii)    membership certificate in Company representing a Seventy Percent (70%) ownership interest in Company, if any; and,

(iii)   the "Palm Suites Land Trust Documents" binder.

b.   <u>Deliveries by BUYER</u>. BUYER will deliver to SELLER:

(i)     Cash payment of the Initial Purchase Price Payment;

(ii)    the original Promissory Note;

(iii)   executed Pledge and Security Agreement; and,

(iv)    executed Guaranty Agreement with Ravi Roopnarine as the personal guarantor for payment of the Purchase Price.

7.   **POST-CLOSING OBLIGATIONS.**

a.   BUYER shall immediately appoint a Trustee for the Trust;

b.   BUYER agrees that as a condition for SELLER entering into this Agreement, BUYER shall immediately defend the Foreclosure Case in the name of and on behalf of the Trust, and shall be responsible for obtaining a dismissal of the Foreclosure Case as to the Trust, and that BUYER expressly warrants that as of the Effective Date of this Agreement SELLER shall forever be discharged and released from any and all liabilities, claims, causes of action, monies or damages of any kind or nature whatsoever, in connection with the Foreclosure Case whether in law or in equity, now existing, known or unknown contingent or matured, express or implied, from the beginning of the world through the Effective Date of this Agreement;

c.   BUYER represents, warrants and agrees that as a further condition for SELLER entering into this Agreement, BUYER and its designated Trustee of the Trust shall fully cooperate with SELLER in preparing, executing, filing and/or recording the Pledge Agreement and any and all other required documents in order to perfect and maintain SELLER's secured interest in the Membership Interest and any and all results and proceeds derived from the sale of the Trust or Property;




Seller

Buyer

d.      BUYER agrees that it shall solely be responsible for, and obligated to pay, any and all sums owed to Kamla Seecharan as of the date of Closing;

e.      BUYER expressly acknowledges and agrees that as of the date of Closing, SELLER shall forever be released and discharged of any obligations, liabilities, claims, causes of action, monies or damages of any kind or nature whatsoever in connection with KFI's mortgage on the Trust.

## 8.  REPRESENTATIONS AND WARRANTIES OF SELLER.  SELLER represents and warrants as follows:

a.      <u>Organization and Good Standing</u>.  The SELLER is duly organized, validly existing and in good standing under the laws of the State of Nevada.

b.      <u>Membership Interest</u>.  Currently, SELLER is the owner, beneficially and of record, of the Membership Interest, which is free and clear of all adverse claims, liens, restrictions on transfer or encumbrances of any kind whatsoever.  At Closing, by virtue of the sale of the Membership Interest from SELLER to BUYER, BUYER shall be the owner of the Membership Interest.

c.      <u>Compliance with Other Instruments</u>.  Performance of this Agreement and compliance with its terms and provisions will not contravene any provisions of any applicable law or of the Articles of Incorporation or By-Laws of the SELLER.

d.      <u>Due Execution</u>.  This Agreement has been duly executed and delivered by SELLER and constitutes the legal, binding and valid obligation of SELLER, enforceable in accordance with its terms.

e.      <u>No Further Approvals</u>.  SELLER has obtained all required approvals for this transaction, and no further approval by the board of directors, officers, or any third-party is required prior to the execution of this Agreement.

f.      <u>Survival of Representations and Warranties</u>.  The representations, warranties, covenants and agreements of the SELLER, contained herein shall survive the Closing.

## 9.  REPRESENTATIONS AND WARRANTIES OF BUYER.  BUYER represents and warrant as follows:

a.      <u>Organization and Good Standing</u>.  BUYER is a Land Trust set up pursuant to the Florida Statutes of the State of Florida, and BUYER is active and in good standing.

b.      <u>Compliance with Other Instruments</u>.  Performance of this Agreement and compliance with its terms and provisions will not contravene any provisions of any applicable law, rule, statute, legislation, regulation, ordinance or code of any governmental entity.

c.      <u>Due Execution</u>.  This Agreement has been duly executed and delivered by BUYER and constitutes the legal, binding and valid obligation of BUYER, enforceable in accordance with its terms.  BUYER has such knowledge and experience in financial and business matters that BUYER is capable of evaluating the merits and risks relating to BUYER's purchase of the Membership Interest.  BUYER has agreed to the Purchase Price on the basis of BUYER's own independent investigation and credit evaluation of the Membership Interest.  BUYER has not


Seller

Membership Interests Purchase Agreement
FLHP MS, LLC
Page 5 of 14

Buyer

sought or relied upon any representations, warranties or statements of any kind made by or on behalf of the SELLER except as contained in this Agreement.

    d.    <u>Investment Intent</u>. BUYER is acquiring the Membership Interest for its own account for investment purposes only, and not with a view toward any public sale or distribution thereof within the meaning of the Securities Act of 1933, as amended. BUYER further acknowledges and agrees that BUYER is purchasing the Membership Interest on an **"AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE AND WITHOUT RECOURSE, EXPRESS OR IMPLIED OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS OR WARRANTIES SET FORTH IN SECTION 8 HEREOF.**

    e.    <u>No Further Approvals</u>. BUYER has obtained all required approvals for this transaction, and no further approval by any third-party is required prior to the execution of this Agreement.

    f.    <u>Indemnification</u>. BUYER shall indemnify, defend and hold SELLER harmless, including SELLER's parent, affiliates, subsidiaries, directors, officers, employees or agents, from and against any and all claims, liabilities, costs, loss, damages, or expenses, including, without limitation, attorneys' fees, of any kind or nature whatsoever, resulting from any claim by BUYER or any third-party individual or entity against SELLER in connection with, arising out of, resulting from or incident to the Foreclosure Case, KFI's mortgage on the Trust or any of BUYER's other obligations set forth under this Agreement (including, specifically, Section 7 and Section 9 hereof), and for any breach or default in the performance of SELLER's obligations to be performed by SELLER hereunder, or for any breach or default of any representation or warranty or the inaccuracy of any representation made by SELLER in, or pursuant to, this Agreement.

    g.    <u>Negative Covenant</u>. BUYER shall not sell or encumber the Membership Interest in any manner whatsoever during the Term of this Agreement and the Term of the Note, without SELLER's prior written consent or until the entire amount owed to SELLER, pursuant to the terms of this Agreement and the Note, has been paid in full.

    h.    <u>Survival of Representations and Warranties</u>. The representations, warranties, covenants and agreements of BUYER, contained herein shall survive the Closing.

**10.**    <u>**ATTORNEYS, BROKERS, CONSULTANTS**</u>. The Parties hereto warrant that no person or entity can properly claim a right to a commission, broker's fee, finder's fee, or other compensation based upon the acts of that Party with respect to the purchase and sale contemplated herein, and each Party hereby agrees to mutually indemnify and hold the other harmless from any and all claims, liabilities, costs, including attorney fees, expense and commissions, resulting from any claim for a commission, fee or other compensation by any Party or entity based upon those acts.

**11.**    <u>**CONFIDENTIALITY**</u>. The SELLER and the BUYER agree to treat and hold all information that it receives from the disclosing Party, in connection with this Agreements and the transaction contemplated herein, as confidential (the "Confidential Information"), refrain from using or disclosing any of the Confidential Information except in connection with this Agreement, and shall deliver promptly to the disclosing Party, at the request and option of the disclosing



    Buyer

Party, all tangible embodiments (and all copies) of the disclosing Party's Confidential Information which are in its possession. In the event that a Party is requested or required (by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process) to disclose any Confidential Information of another Party, such Party shall notify the disclosing Party promptly of the request or requirement so that the disclosing Party may seek an appropriate protective order or waive compliance with the provisions of this section. If, in the absence of a protective order or the receipt of a waiver hereunder, a Party is, on the advice of counsel, compelled to disclose any Confidential Information of the disclosing Party to any tribunal or else stand liable for contempt, such Party may disclose the Confidential Information to the tribunal; provided, however, that such Party shall use reasonable efforts to obtain an order or other assurance that confidential treatment will be accorded to such portion of the Confidential Information required to be disclosed as the disclosing Party may designate. The disclosing party shall bare all costs and expenses, including reasonable attorney fees, associated with or related to said effort to obtain said order or other assurance.

**12.    NOTICES.**    Any notice, communication, request, reply or advice or other notice pertaining to this Agreement to be given, made or accepted by either Party to the other must be in writing and shall be given or be served only by dispatching the same: (i) by hand delivery, (ii) by a reputable overnight courier delivery service, and such notice so dispatched shall become effective on the date of receipt, or (iii) by United States certified mail, return receipt requested, and addressed to the Party to be notified, and such notice so dispatched shall be deemed delivered three (3) days after the date dispatched to each Party's address as set forth above, or to such other address as designated by either Party in writing to the other Party.

**13.    MISCELLANEOUS.**

    a.   <u>No Third-Party Beneficiaries</u>. This Agreement shall not confer any rights or remedies upon any Person other than the Parties, and their respective successors and permitted assigns.

    b.   <u>Succession and Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns. BUYER shall not assign either this Agreement or any of its rights, interests, or obligations hereunder, in whole or in part, without the prior written consent of SELLER. SELLER may, in its sole discretion, assign any or all of its rights, entitlements and/or interests hereunder to one or more of its Affiliates; or assign any or all of its rights, entitlements and/or interests hereunder to any third-party individual or entity.

    c.   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. For purposes of executing this Agreement, a document signed and transmitted by facsimile machine or telecopier shall be treated as an original document. The signature of any Party thereon shall be considered as an original signature and the document transmitted shall be considered to have the same binding legal effect as if it were the signed original. At the request of either Party, any facsimile or telecopy document shall be re-executed by both Parties in original form. No Party hereto may raise the use of facsimile machine or telecopier or the fact that any signature was transmitted through the use of a facsimile or telecopier machine as a defense to the enforcement of this Agreement.


(Seller)

Buyer

d.    Headings. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

e.    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Florida without giving effect to any choice or conflict of law provision or rule (whether of the State of Florida or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Florida.

f.    Amendments and Waivers. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by BUYER and SELLER. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

g.    Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation, in any jurisdiction, shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

h.    Expenses. Each Party shall bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby. In the event of termination of this Agreement, the obligation of each Party to pay his or its own expenses will be subject to any rights of such Party arising from a breach of this Agreement by another Party.

i.    Advice of Counsel. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

j.    Submission to Jurisdiction. The Parties acknowledge and irrevocably and unconditionally: (i) agree that any suit, action or legal proceeding arising out of or relating to this Agreement, or the transactions contemplated hereby, must be brought in Orange County, Florida; (ii) consent to the jurisdiction of such court in any suit, action or proceeding; (iii) waive any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts; and (iv) agree that service of any court paper may be effected on such Party by mail, as provided in this Agreement, or in such manner as may be provided under applicable laws or court rules in the State of Florida.

k.    Attorneys' Fees. In the event any suit or other legal proceeding is brought for the enforcement of any of the provisions of this Agreement, the Parties hereto agree that the prevailing Party shall be entitled to recover from the other Party, upon final judgment on the merits, reasonable attorneys' fees and costs, including attorneys' fees and costs for any appeal, incurred in bringing such suit or proceeding.

l.    Further Assurances. After the Closing, the Parties will cooperate in good faith and will take all appropriate action and execute any documents, instruments or conveyances of



Seller

Buyer

any kind which may be reasonably necessary or advisable to carry out any of the transactions contemplated hereunder.

      m.    Entire Agreement. This Agreement and the instruments to be delivered by the Parties hereto represent the entire understanding and agreement between the Parties hereto and supersedes any prior understandings, agreements, or representations by or between the Parties, written or verbal, to the extent they relate in any way to the subject matter hereof.

**IN WITNESS WHEREOF,** the Parties' duly authorized representatives have executed this Agreement as of the date first above written.

**WITNESSES:**

Name:  Leonard H. Baird, Jr.

Name:  Rachel P. Eller

**BUYER:**

**Ravi Roopnarine, as Trustee of the RAVI WORLD LAND TRUST DATED DECEMBER 20, 2007**

Signature:
By:  Ravi Roopnarine
Title:  Trustee

**WITNESSES:**

Name:  Leonard H. Baird, Jr.

Name:  Rachel P. Eller

**SELLER:**

**MIRABILIS VENTURES, INC.,**
a Nevada corporation

Signature:
By:  Jodi Jaiman
Title:  President



STATE OF ___Florida_____ )
COUNTY OF __Lake_____ )

I certify that on December __27th_ 2007, Ravi Roopnarine who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, came before me in person and stated to my satisfaction that he:

    (a)     has been duly sworn to me and made the attached instrument; and

    (b)     was authorized to and did sign and execute this instrument on behalf of and as Trustee of the RAVI WORLD LAND TRUST Dated December 20, 2007 (the "Trust"), the entity named in this instrument, as the free act and deed of the Trust, by virtue of the authority granted by the RAVI WORLD LAND TRUST Agreement. He is personally known to me xxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

[SEAL]

                    _____
                    Notary Public

                    _____
                    Name:


STATE OF ___Florida_____ )
COUNTY OF __Lake_____ )


On this the __27th_ day of December, 2007, before me personally came Jodi Jaiman, President of Mirabilis Ventures, Inc, who being by me duly sworn, did depose and say that she signed, sealed and delivered this instrument as her voluntary act and deed. She is personally known to me or has produced ___driver's license_____ as identification.

[SEAL]

                    _____
                    Notary Public

                    _____
                    Name:


Seller

Buyer

EXHIBIT "A"

PROPERTY

See attachment.



Exhibit "A"
Legal Description

Parcel 1:    Lots 3, 4, 5, 6, 7 and 8 of Lake Cecile Estates, according to the Plat thereof as recorded in Plat Book 1, Page 417, Public Records of Osceola County, Florida.

Less that part taken for Road Right-of-Way for State Road 530.

Parcel 2:    That portion of the North 1/2 of the Southwest 1/4 of the Northwest 1/4 of Section 12, Township 25 South, Range 28 East, lying South and West of State Road No. 530, Osceola County, Florida.

Less and except any portion of the above-described property which may be subject to any dispute as to the boundaries caused by a change in location of any body of water within or adjacent to the property or any adverse claim by the State of Florida to all or a part of the property which is or was previously under water.

EXHIBIT "B"

**PROMISSORY NOTE**

See attachment.



Buyer

## EXHIBIT "C"

## PLEDGE AND SECURITY AGREEMENT

See attachment.



Seller

Buyer

**EXHIBIT "D"**

**GUARANTY**

See attachment.



Seller

Buyer