# EXHIBIT #3

## PROMISSORY NOTE

| | |
|---|---|
| **DATE OF NOTE:** | December 27, 2007 |
| **PRINCIPAL AMOUNT:** | $585,000.00 |
| **MATURITY DATE:** | December 31, 2008 |
| **INTEREST RATE:** | 6.0% per annum |
| **MAKER:** | **Ravi Roopnarine as Trustee of the RAVI WORLD LAND TRUST dated December 20, 2007** |
| **MAKER'S ADDRESS:** | 11450 Nellie Oaks Bend, Clermont, FL 34711 |
| **HOLDER:** | **MIRABILIS VENTURES, INC.**, a Nevada corporation |
| **HOLDER'S ADDRESS:** | 2875 South Orange Avenue, Suite 500, PMB 2325, Orlando, Florida 32806 |

FOR VALUE RECEIVED, **Ravi Roopnarine as Trustee of the RAVI WORLD LAND TRUST dated December 20, 2007** (the "Maker"), at 11450 Nellie Oaks Bend, Clermont, FL 34711, promises to pay to the order of **MIRABILIS VENTURES, INC.**, a Nevada corporation, or its designee, successors and assigns (any of which herein referred to as the "Holder"), at 2875 South Orange Avenue, Suite 500, PMB 2325, Orlando, Florida 32806, or such other place as the Holder may direct, the total principal sum of **Five Hundred Eighty-Five Thousand and 00/100 Dollars ($585,000.00)** (the "Principal"), together with interest at the fixed rate of Six Percent (6.0%) per annum ("Interest"), for the Term (as defined herein) of this Promissory Note (the "Note"). Interest shall be payable monthly in arrears commencing on the first day of the month immediately following the month this Note was executed, and on the first day of each and every month thereafter, through and including the Maturity Date (as defined herein). This Note shall be payable to Holder on or before December 31, 2008 (the "Term" or "Maturity Date"), at which time the entire remaining balance of Principal and all accrued but unpaid interest thereon shall be due and payable in full.

1.      Note Conditions. This Note is made and entered into in connection with that certain Membership Interest Purchase Agreement by and between Holder and Maker for the sale of Seventy Percent (70%) of the total issued and outstanding membership interests of **FLHP-MS, LLC**, a Florida limited liability company (the "Company"), dated of even date herewith (the "Purchase Agreement"). Maker acknowledges and agrees that as a condition of executing this Note, Maker shall enter into and execute that certain Pledge and Security Agreement by and between Holder and Maker (the "Pledge Agreement"), which shall secure the Note with the Membership Interest (as defined in the Purchase Agreement) of the Company and any and all results and proceeds derived from the sale of the Trust or Property (as those terms are defined in the Purchase Agreement), and the Note shall be personally guaranteed by **RAVI ROOPNARINE** pursuant to that certain Guaranty Agreement dated of even date herewith (the "Guaranty"). The Pledge Agreement shall be recorded and shall be perfected by filing that certain UCC-1 Financing Statements. This Note, Purchase Agreement, Pledge Agreement, Guaranty and UCC-1 Financing Statements, and any and all agreements and documents executed ancillary thereto are collectively referred to as the "Purchase Documents". This Note is subject to all terms and conditions contained in the Purchase Agreement, Pledge Agreement and Guaranty, which are made a part

Maker

hereof and incorporated herein by this reference. Any and all capitalized terms used, but not otherwise defined herein shall have the meanings ascribed thereto in the Purchase Agreement, Pledge Agreement and/or Guaranty.

2.     Acceleration of Maturity.  As to this Note, the Maker waives all notice of acceleration, presentment, protest and demand, dishonor and non-payment of this Note, and expressly agrees that the Maturity Date of this Note, or any Installment payment hereunder, may be extended from time to time without in any way affecting the liability of the Maker. In the event of default in the payment of any of the Interest when due or payment of the entire Principal and any accrued but unpaid interest thereon when due, as provided in this Note, time being of the essence, the Holder of this Note may without notice or demand declare the entire Principal and all accrued but unpaid interest thereon immediately due and payable.

3.     Application of Payments.  Interest is due on the first of each month during the Term. When any payment is made by the Maker to Holder, such payment shall be applied by the Holder first to any penalties due from Maker, next to reimburse any costs or advances hereafter funded by Holder, next to the payment of interest accrued as specified above and then to the repayment of the Principal sum.  All payments shall be made by wire transfer as directed by Holder. However, if no such directions are given, all payments shall be made to Holder's address above or such other place as Holder designates to Maker.

4.     Modification of Note.  The Holder may, with or without notice to the Maker, cause additional parties to be added to this Note, or release any party, or revise, extend, or renew this Note, or extend the time for making any payment provided for in this Note, or accept any payment in advance, all without affecting the liability of the Maker.

5.     Collection Costs.  Should it become necessary to collect this Note through an attorney, the Maker of this Note hereby agrees to pay to Holder all costs and expenses of collections, including, without limitation, reasonable attorneys' fees and costs incurred to represent the Holder in any negotiations, litigation, trial, appeal, bankruptcy, contest, dispute, suit or proceedings and post-judgment proceedings.

6.     Waiver of Rights.  Maker hereby waives: (a) presentment, demand, protest, notice of dishonor and/or protest and notice of nonpayment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to the Holder until all indebtedness of Maker to the Holder, howsoever arising, shall have been paid; and (c) the right to require the Holder to proceed against the Maker through any legal proceeding, or to pursue any other remedy in the Holder's power.

7.     Grace Period.  Notwithstanding any contrary provision of this Note, Maker will be allowed a grace period of five (5) days on any Interest payment coming due hereunder. Maker will, therefore, not be in default unless Maker fails to make such payment within five (5) days after the Interest payment due date or expiration of the Maturity Date, whichever is sooner.

8.     Default.  At the election of the Holder of this Note, all payments due hereunder may be accelerated and this Note shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (1) Maker fails to pay on or before the date due, any amount payable hereunder, whether Interest or Principal; (2) Maker fails to perform or observe any other term or provision of this Note with respect to payment; (3) Maker fails to perform or observe any other term or provision of this Note; or (4) there exists a default or breach under the Pledge Agreement, a default or breach

Maker

under the Purchase Agreement, or default or breach under or misrepresentation contained in any other agreement, document or certificate in connection with the Purchase Documents, which default or breach is not cured within any grace period expressly provided therefore in such document. In the event the Maker shall fail to make any payment of the of Interest or Principal, as applicable, within five (5) days after the due date thereof, then Maker shall incur a late charge equal to two percent (2%) per month of any such late amount. After default, under this Note, so long as such default remains uncured, the Maker shall pay Interest on any unpaid Principal to the Holder of this Note at a fixed rate equal to the lesser of the highest rate allowable by law or Eighteen Percent (18%). Interest shall be computed on the basis of a 365 day year based on the actual number of days elapsed. Time is of the essence for all timeframes and payments contained under this Note. Notwithstanding anything contained herein with regard to the payment of late charges or interest, Holder shall have the immediate right to exercise all remedies available to Holder, whether contained in this Note, at law or in equity.

9.     No Right of Set-Off.  Maker shall not have any right of set-off or off-set of any kind or nature whatsoever should Holder be in default under any of the Purchase Documents until a final adjudication of such default or breach has been determined.

10.     Prepayment.  Maker will have the right to prepay this indebtedness in whole or in part at any time or times without premium or penalty; provided, however, that at the time of prepayment Maker is not in default of any obligation under this Note or the accompanying Purchase Documents, if any, and further provided that at the time of the prepayment Maker also pays all unpaid interest accrued hereunder. If Maker shall prepay a portion of the indebtedness, after application of said prepayment, the remainder, if any, shall be applied to reduce the Principal; provided, however, that any prepayment of less than the entire balance due shall not operate to relieve the Maker from its obligation to make the next scheduled Interest payment and the remaining balance shall not be reamortized over the remaining term without the express written consent of the Holder.

11.     Forbearance Not Waiver.  If Holder forbears from requiring strict adherence to any of the terms of this Note or allows late or partial performance of any of Maker's obligations (including, without limitation, late or partial payments), regardless of the length of time that Holder so forbears or allows late or partial performance, Holder will not be deemed to have thereby waived, or to be estopped from enforcing, its right thereafter to require strict adherence to all of the terms of this Note, nor Holder's right to accelerate payments, to foreclose any accompanying liens, or exercise other remedies for Maker's failure to adhere strictly to, and perform timely and fully, all of the requirements hereof. No patterns of conduct followed or allowed by Holder will be deemed a waiver of any of Holder's rights.

12.     Compliance With Usury Laws.  All agreements between the Holder and the Maker are hereby expressly limited so that, in no event, shall the amount paid or agreed to be paid to the Holder for the use, forbearance, or detention of the money under this Note exceeds the maximum amount permissible under the laws of the State of Florida. If, at the time of any interest payment, the payment amount due under this Note is in excess of the legal limit, the obligation shall be reduced to the legal limit. If the Holder should ever receive as interest, an amount that exceeds the highest lawful rate, the amount that would be excessive as interest shall be applied to the reduction of the Principal amount owing under this Note, and not to the payment of Interest.

13.     Governing Law.  This Note has been made and delivered in the State of Florida, and this Note shall be construed in accordance with the laws of the State of Florida. In any action

Maker

in connection with or to enforce this Note, the Maker agrees to venue and jurisdiction as set forth in accordance with the terms of the Purchase Agreement.

14.    Cumulative Remedies.    The rights, remedies and powers of Holder as provided herein or in any other document securing or related to this Note, shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of Holder, and may be exercised as often as the occasion therefore shall arise.    No act of omission or commission of Holder, including specifically any failure to exercise any right, remedy or recourse, shall be effective as a waiver thereof unless it is set forth in a written document executed by Holder, and then only to the extent specifically recited therein.    A waiver or release with reference to one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to any subsequent event.    Maker hereby agrees to indemnify, defend and hold harmless Holder from and against any and all claims, loss, cost, damage or expense, including, without limitation, attorneys' fees, which may be incurred by Holder in connection with or as a result of any default, breach or misrepresentation by Maker under any of the Purchase documents, or a breach or default under or misrepresentation contained in any other agreement, document or certificate executed or delivered in connection with the Purchase Documents.

15.    Miscellaneous.    This Note and the Purchase Documents constitute the entire agreement between the Holder and Maker and supersedes, replaces and terminates all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof.    The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or the validity of any other provision herein and the invalidity or unenforceability of any other provision of this Note.    This Note may be amended or modified only in writing signed by each party hereto.    This Note shall be binding upon and inure to the benefit of Maker and Holder and their respective successors, assigns, heirs and personal representatives.    No obligations of the Maker hereunder can be assigned without the prior written consent of Holder.

**THIS NOTE AND ANY OTHER PURCHASE DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. ANY AND ALL STATE OF FLORIDA DOCUMENTARY TAX AND INTANGIBLE TAX REQUIRED BY LAW SHALL BE THE RESPONSIBILITY AND OBLIGATION OF MAKER AND HAVE BEEN OR WILL BE PAID BY MAKER CONTEMPORANEOUSLY WITH THE EXECUTION OF THIS NOTE.**

WITNESSES:                                                    MAKER:

                                                                      Ravi Roopnarine, as Trustee of the
                                                                      RAVI WORLD LAND TRUST
Name:        Leonard H. Baird, Jr.    DATED DECEMBER 20, 2007

Name:        Rachel P. Eller              Signature:
                                                                      By:    Ravi Roopnarine
                                                                      Title:    Trustee

Maker

STATE OF ____ Florida ____ )
COUNTY OF ____ Lake ____ )

I certify that on December 27th, 2007, Ravi Roopnarine who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, came before me in person and stated to my satisfaction that he:

    (a)    has been duly sworn to me and made the attached instrument; and

    (b)    was authorized to and did sign and execute this instrument on behalf of and as Trustee of the RAVI WORLD LAND TRUST Dated December 20, 2007 (the "Trust"), the entity named in this instrument, as the free act and deed of the Trust, by virtue of the authority granted by the RAVI WORLD LAND TRUST Agreement. He is personally known to me xxxxxx produced xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx as identification. x

[SEAL]

                                                Notary Public

    Rachel P. Olher
    Commission # DD402422
    Expires December 16, 2009
    Bonded Troy Fain Insurance Inc 800-385-7019

                                                Name:

Maker